**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | 3:13-CR-50 |
| **v.** : | |
| : | **(JUDGE MANNION)** |
| **JOVAN MARTIN,** : | |
| **Defendant** : | |

## MEMORANDUM

**I.   BACKGROUND**

On May 8, 2020, defendant Jovan Martin filed, *pro se*, a Motion for Compassionate Release/Reduction of Sentence under 18 U.S.C. §3582(c)(1)(A), and request for immediate transfer to home confinement related to his 108-month prison sentence, due to the COVID-19 pandemic and his medical conditions. (Doc. 152). In particular, Martin seeks the court to immediately release him from confinement in prison at FCI Allenwood, Low Security, located in White Deer, Pennsylvania, to home confinement in Philadelphia, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if he does, based on his chronic medical conditions of Type II diabetes requiring Insulin twice per day, high cholesterol and acid reflux, he will be at greater risk to suffer more severe consequences.

In his motion, Martin recognizes that §3582(c)(1)(A) requires him to exhaust his administrative remedies with the BOP by submitting a request to

1

the Warden and then, if it is denied, pursue all of his remedies before filing a motion with the court for compassionate release. He also points out that if the Warden does not respond to a request within 30 days, an inmate can file a motion directly with the court. Nonetheless, despite his understanding of the statute, Martin does not state that he filed a request for compassionate release with Warden White. Nor do his exhibits show that he sent the Warden a request. Rather, Martin states that "[he] believes exhaustion would be futile in [his] case" since "staff made it clear that no inmate in [his] housing unit qualify because nobody meets the criteria or age requirements" and have "denied all the request[s]." (Doc. 152 at 1). Martin also states that COVID-19's risk poses "exigent circumstances" and alleges that Allenwood Medium and USP have confirmed cases of the virus. He further alleges that the recommended safety protocols cannot be followed in the prison and that it will only be a matter of time before COVID-19 spreads to the entire complex. Martin also alleges that the medical treatment at the prison is "careless and horrible." He states that under his conditions of confinement "living in a three person cube in an open dorm setting", as well as sharing community showers, he is at high risk of contracting COVID-19.

Martin lists various programs and courses he has completed in prison to support his request for release to home confinement. Martin also states that he has completed over 75% of his sentence. Martin's projected release date from prison is December 16, 2020, and his projected transfer date to a halfway house, Residential Reentry Center ("RRC"), was July 22, 2020.

As such, Martin contends that he has set forth "extraordinary and compelling" reasons for the court to reduce his prison sentence and immediately release him to home confinement.

Martin also filed Exhibits in support of his motion, including a copy of his prescriptions and their side effects as well as a copy of his April 28, 2020 Request to Staff (addressed to Mr. Rothermel) to be referred to home confinement due to his medical conditions which he stated made him more vulnerable to COVID-19. He also submitted a copy of his proposed Release Plan he attached to his Request. Martin further included a copy of the response he received from the staff member on April 30, 2020 stating that: "Inmates having a pattern risk score anything above minimum score will not receive priority treatment. Your score is Low." (Doc. 152-1 at 6-7). However, as indicated above, Martin did not submit any request to the Warden White for Compassionate Release/Reduction in Sentence based on extraordinary or compelling circumstances due to his health conditions and the COVID-19 pandemic, pursuant to BOP Program Statement 5050.50, before he filed his instant motion.

After the court directed the government to respond to Martin's motion, it filed its brief in opposition with Exhibits on June 4, 2020. (Docs. 156, 156-1-5, & 158).

After considering Martin's motion, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust all of his BOP administrative remedies under §3582(c)(1)(A)(i). To the extent Martin is also

seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[1]

## II.    DISCUSSION[2]

Martin seeks his immediate release from FCI Allenwood Low and requests the court to allow him to serve the remainder of his prison sentence in home confinement stating that he is at a higher risk of severe complications if he contracts the COVID-19 virus based upon his chronic medical conditions.

Martin also references a March 26, 2020 Memorandum from U.S. Attorney General William Barr regarding guidelines to the BOP for the

---

[1]Since Martin is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act, which he references in his motion, in addition to a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

[2]Since the government states the background of this case in its brief, (Doc. 156 at 2), the court does not repeat it herein. Suffice to say that Martin is currently serving an aggregate 108-month prison sentence that was imposed on March 17, 2014, after he pled guilty to conspiracy to make false statements in the acquisition of firearms, 18 U.S.C. §371, possession of firearms by a user of controlled substances, 18 U.S.C. §992(g)(3), and distribution and possession with intent to distribute cocaine, 21 U.S.C. §841(a)(1). The court also ordered Martin to be on three years of supervised release.

implementation of the CARES Act, §12003(b)(2), and directing the BOP to identify suitable inmates for home confinement with COVID-19 risk factors. Thus, liberally construed, he can be deemed as claiming that he is the type of inmate who meets Barr's criteria for release to home confinement under the Act due to the COVID-19 pandemic.

As relief, Martin requests the court to immediately release him from confinement at FCI Allenwood Low, where there are no positive cases of COVID-19 for staff and inmates as of July 2, 2020[3], to home confinement for service of the remainder of his sentence.[4]

Initially, the government states that although Martin was reviewed for halfway house placement, and will be transferred to a RRC on July 22, 2020, he has not submitted a complete request to the Warden for compassionate release.

Specifically, the government, (Doc. 156 at 16-17), states:

> On April 26, 2020, Martin sent a two-line, electronic mail message to the Warden, "[I am ] respectfully requesting to be released to home confinement, or under 18 U.S.C. §3582(c)(1)(A), in light of my unique

---

[3] The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. USP Allenwood and FCI Allenwood Medium also have no current positive cases of COVID-19 among staff and inmates and, each one of these institutions reported one staff had recovered from the virus.

[4] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro v. Finley, 2020 WL 2084960 (M.D.Pa. April 30, 2020), and since many of the measures are stated in the government's brief, (Doc. 156 at 3-10), as well the BOP's websites cited, they are not repeated herein. *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

vulnerability to COVID-19." ["Your immediate attention will be greatly and most sincerely appreciated."] [Doc. 156-1 at 1-2]. On April 28, 2020, the Warden reviewed Martin for priority home confinement under 18 U.S.C. §3624(c)(2), section 12003 of the CARES Act and the Attorney General's Memoranda, but determined that he was not a candidate for that program because he had not maintained 12 months of clear conduct. [Doc. 156-1 at 1-2; Doc. 156-4].

Further, the government, (Id. at 17-18), explains that "[a]lthough [Martin] also requested release under 18 U.S.C. §3582(c)(1)(A), the Warden responded and processed Martin's [email] request only as a home confinement request", and that "[t]he Warden's limited response to Martin's email request for release is understandable in view of the BOP's program statement concerning procedures for implementing [18 U.S.C.] §3582", which requires certain information. *See* Doc. 156-5 at 3, BOP Program Statement §571.61(a)(1) and (2) (Initiation of request – extraordinary or compelling circumstances).

The Program Statement, in relevant part, provides:

§571.61 Initiation of request – extraordinary or compelling circumstances.

a. A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:

6

> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

Further, under §571.63, if the Warden denies an inmate's request, "the inmate will receive written notice and a statement of reasons for the denial", and "[t]he inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." (Doc. 156-5 at 15).

The government then states that Martin's email request did not contain the minimum information required to consider it as a §3582(c)(1)(A) request for compassionate release since "it failed to identify the specific medical condition or circumstances making him more vulnerable despite the BOP's COVID-19 protocols" and it did not "describe a release plan covering such basic issues as his residence upon release, his means of supporting himself, and where he will receive medical treatment."

Although Martin's April 26, 2020 email request specifically asked only "to be released to home confinement", it did alternatively reference "18 U.S.C. §3582(c)(1)(A)." Nonetheless, his request did not comply with the above stated minimum requirements.

Additionally, the government represents that "according to BOP counsel, Martin has not submitted any requests for administrative remedies

7

setting forth the information needed to effectively consider his request for compassionate release." (Id. at 19). Thus, it states that since "Martin has not filed a request for a sentence reduction in conformity with the BOP program statement requirements for compassionate release requests", "[h]is motion, [], is premature, and should be denied without prejudice to the refiling of his motion after exhausting administrative remedies." (Id. at 21).

In fact, Martin's own Exhibits, (Doc. 152-1 at 6-7), show that after his email he did make an Inmate Request to Staff for home confinement on April 28, 2020, and that the staff member responded to it on April 30, 2020. However, Martin did not then submit a request to Warden White.

The court finds that Martin's motion is premature and that he must first submit a proper request for compassionate release to the Warden pursuant to §3582(c)(1)(A), which complies with the requirements specified in the BOP program statement for such requests. *See* United States v. Greenlove, 2020 WL 3547069 (M.D.Pa. June 30, 2020) (this court found that if the defendant submits a request for compassionate release to the Warden it must be a proper request that included the required information). *See also* United States v. Sheaffer, 2020 WL 3498220, *6 (M.D.Pa. June 29, 2020) (Court denied defendant's motion seeking compassionate release without prejudice to re-file it after he properly exhausted his administrative remedies since his request to the Warden pertained only to home confinement) (citations omitted).

In United States v. Williams, 2020 WL 2748287, *2 (E.D.Tenn. May 27, 2020), the court explained the process:

> The BOP has outlined the administrative appeal process. See Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582 and 4205(g) (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The BOP Program Statement explains that a prisoner seeking a compassionate release must first file a request with the warden asking the BOP to move for compassionate release on the prisoner's behalf. *See id.* at 3 (citing 28 C.F.R. §571.61). If that request is denied, the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure. *See id.* at 15 (citing 28 C.F.R. §571.63).

Nor can the court waive §3582(c)(1)(A)'s exhaustion requirement or excuse it as futile, as Martin contends. *See* United States v. Bolze, --- F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tenn. May 13, 2020) (Court held that it could not waive §3582(c)(1)(A)'s exhaustion requirement, since it is "a jurisdictional threshold to consideration of defendant's motion", stating that "[w]hen a statutory bar to suit is jurisdictional, 'a litigant's failure to comply with the bar deprives a court of all authority to hear a case.'") (quoting United States v. Wong, 575 U.S. 402, 409, 135 S.Ct. 1625 (2015)).

Further, even assuming *arguendo* that Martin's 2-sentence April 26, 2020 email request was a proper request for compassionate release to the Warden pursuant to §3582(c)(1)(A), he has not yet appealed the Warden's April 28, 2020 response, which was timely made within the 30-day requirement. *See also* Williams, 2020 WL 2748287, *2 (although defendant submitted a request for compassionate release to the warden and it was

denied, court held that "[t]his may have satisfied the first step in the administrative process", but since defendant "[did] not state whether he appealed that denial through the BOP administrative process", "it does not appear that [defendant] 'has fully exhausted all administrative rights to appeal … [under 18 U.S.C. §3582(c)(1)(A)].").

In short, Martin must exhaust all of his BOP administrative remedies after he submits a proper request to the Warden, if the Warden timely responds to it. *See* United States v. Early, 2020 WL 2572276 (W.D.Pa. May 21, 2020).

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

In Early, 2020 WL 2572276, *3, the court stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court

10

in Early, *id*., also held that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id*. (quoting Raia, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id*.

Also, this court has found that a defendant has not exhausted his administrative remedies simply because 30 days has expired since the warden received defendant's request for compassionate release when the warden denies defendant's request within the time frame provided for in the First Step Act. *See* Greenlove, 2020 WL 3547069.

As the court in Early, *id*. at *3, explained:

Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* United States v. Nance, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id*. ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, United States v. Bolino, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, United States v. Bevans-Silva, 2020

11

WL 2475079 (S.D. Ga. May 13, 2020); United States v. Samuels, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); United States v. McCallister, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); United States v. Rodriguez, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); United States v. Mattingley, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); United States v. Keith, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

Martin has not exhausted all of his BOP administrative remedies prior to his instant filing. Construing the Warden's April 28, 2020 response to Martin's April 26, 2020 request for release to home confinement as a formal denial, Martin must file an appeal of the response with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Martin must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id*. The appeal to the General Counsel is the final administrative appeal in the process. *See* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

Martin has not exhausted all of his administrative remedies available with the BOP prior to filing his motion, therefore the court will dismiss it without prejudice. *See* Furando v. Ortiz, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed without prejudice the petition of inmate serving his

federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high risk if contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.); Smith, 2020 WL 2063417, *2 ("Absent a showing of exhaustion, this Court cannot rule on [defendant's] request for compassionate release.") (collecting cases finding that "a failure to satisfy 18 U.S.C. §3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"). *See also* United States v. Bolze, ---F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tn. May 13, 2020) (court held that "the exhaustion requirement is a prerequisite to the court's exercise of its authority under §3582(c)(1)(A)", and "the Court lacks jurisdiction to reduce a term of imprisonment under §3582(c)(1)(A) if defendant has not exhausted his administrative remedies …."); United States v. Blevins, 2020 WL 3260098, *2 (S.D. Miss. June 16, 2020) ("The statute [18 U.S.C. §3582(c)(1)(A)] does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise.") (citing United States v. Koons, 2020 WL 1940570, at *3 (W.D.La. Apr. 21, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute."); United States v. Martin, 2020 WL

3065302, at *3 (S.D.Miss. June. 9, 2020)) (district court criminal nos. omitted).

The court also finds that "[t]he circumstances of [Martin's] case fit squarely within the purposes of the exhaustion requirement." Cordaro, 2020 WL 2084960, *5 (citation omitted). *See also* Early, 2020 WL 2572276, *4 ("The fact remains, however, that Defendant must exhaust his administrative remedies before he may seek relief in this Court.").

Additionally, the court cannot address whether Martin has demonstrated, as he alleges, that "extraordinary and compelling reasons" justify his compassionate release from prison, since he has not exhausted his administrative remedies with the BOP as required. *See* Greenlove, 2020 WL 3547069, *7 (citations omitted).

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id. See also* United States v. Zywotko, 2020 WL 1492900, *2 (M.D.Fl. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence

14

set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13.") (citation omitted).

Finally, to the extent Martin is deemed as also relying on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, (*see* Doc. 156-2 & Doc. 156-3), such reliance is misplaced.

This court has held that, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." Cruz, 2020 WL 1904476, *4; Cordaro, 2020 WL 2084960, *6-7 ("the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citations omitted). *See also* United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020); United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020

WL 1984117, *3 (M.D.Pa. April 27, 2020) (same); <u>United States v. Williams</u>, 2020 WL 2748287, *1 (E.D.Tenn. May 27, 2020) ("The CARES Act gives decision-making authority to of the Attorney General and the Director of the [BOP]", and "Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.") (citations omitted).

### III.   CONCLUSION

Based on the foregoing, Martin's motion for compassionate release to home confinement related to the COVID-19 pandemic, **(Doc. 152)**, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Further, insofar as Martin is challenging any decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: July 2, 2020**
13-50-01